IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONY LIFE INSURANCE  :
COMPANY,  :
       Plaintiff  :
         : CIVIL NO. 1:CV-15-2109
  vs.  :
         : (Judge Caldwell)
CAROL SNYDER, f/k/a CAROL  :
ECKERT, and PAMELA ECKERT,  :
       Defendants  :

*M E M O R A N D U M*

I. *Introduction*

      Invoking our diversity jurisdiction, plaintiff, MONY Life Insurance Company ("MONY"), filed this interpleader action to resolve which of the defendants is entitled to the proceeds of an insurance policy MONY issued on the life of Steve Eckert (the "Insured"). Defendants are Carol Snyder ("Snyder"), the Insured's ex-wife, and Pamela Eckert ("Eckert"), his widow.

      Eckert filed three counterclaims against MONY, all on her own behalf or as executrix of the Insured's estate, based on MONY's alleged failure to properly advise the Insured about the policy. The counterclaims are: (1) MONY breached a fiduciary duty it owed the Insured; (2) MONY breached a duty of good faith and fair dealing it owed the Insured; and (3) MONY violated the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. Ann. §§ 1171.1-1171.15.[1]

---

[1] Eckert asserts she mistakenly pled this counterclaim as one under the Unfair Insurance Practices Act and requests an opportunity to amend the claim to make it a bad-faith

We are considering Plaintiff's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaims for failure to state a claim upon which relief can be granted. The same motion requests approval for paying into court the proceeds of the life insurance policy and discharge of MONY from the suit, leaving the two defendants to litigate their respective claims to the proceeds.

II.  *Standard of Review*

We use the same standard under Rule 12(b)(6) in deciding a motion to dismiss a counterclaim as we do in deciding a motion to dismiss a complaint. *U.S. Renal Care, Inc. v. Wellspan Health*, No. 14-CV-2257, 2015 WL 5286638, at *6 (M.D. Pa. Sept. 10, 2015). Thus, we "accept all factual allegations" of the counterclaim "as true, construe the [counterclaim] in the light most favorable to the [nonmoving party], and determine whether, under any reasonable reading of the [counterclaim], the [nonmoving party] may be entitled to relief." *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted)(internal quotation marks omitted)(brackets added).

III.  *Background*

In relevant part, plaintiff MONY alleges as follows. On or about July 30, 1985, MONY issued a life insurance policy on the life of the Insured with a death benefit in the amount of $127,000. (Doc. 1, Compl. ¶ 6). The owner of the policy was the Insured, and the beneficiary was "Carol Eckert – spouse," (*id.* ¶ 7), now Carol Snyder.

---

claim under 42 Pa. Cons. Stat. Ann. § 8371. We will grant that request.

On or about March 9, 1989, the Insured and Snyder were divorced.  (*Id.* ¶ 8).  On or about January 9, 1989, they had executed a property settlement agreement, dividing their property as part of their divorce.  (*Id.*).  "At or around the time of the divorce, the Insured never changed the beneficiary election under the Policy."  (*Id.* ¶ 9).  After the divorce, the beneficiary was changed to: "former wife, Carol Snyder, if living, if not, the insured's executors or administrators."  (*Id.* ¶ 10).

The Insured married Eckert in or around 2006.  (*Id.* ¶ 11).  "By letter dated September 17, 2015, prior to the Insured's death, the Insured wrote to MONY expressing concern about a change of ownership effective September 5, 2014, that had changed the policy owner from the Insured to Ms. Snyder."  (*Id.* ¶ 12).  "On October 18, 2015, while MONY was investigating the allegations made regarding the Policy, the Insured passed away."  (*Id.* ¶ 13).

Eckert is the executrix of the Insured's estate, and Snyder is the beneficiary of record on the policy.  (*Id.* ¶¶ 14 and 15).   Snyder believes she is entitled to the proceeds of the  policy (*id.* ¶ 16), and Eckert has indicated she wants to litigate who is entitled to the proceeds of the policy.  (*Id.* ¶ 17).

Asserting a status as "mere stakeholder," MONY admits the proceeds of the policy are payable but alleges it is unable to determine who is entitled to them.  (*Id.* ¶¶ 20–22).  MONY therefore requests an injunction against anyone suing it for the proceeds, that it be discharged from the litigation after payment of the proceeds into court, and that the two defendants be left to litigate their claims to the proceeds.  (Id. ¶¶ 24 and 25).

Snyder filed an answer to the complaint and a crossclaim against Eckert, asserting she was entitled to the proceeds of the policy. Eckert filed an answer and crossclaim against Snyder, asserting she was entitled to the proceeds. Eckert's pleading also contained three counterclaims against MONY.

As to those counterclaims, Eckert alleges as follows, in pertinent part. The death benefit is $170,000, not $127,000. (Doc. 9, Answer ¶ 6). She married the Insured in 2011, not in 2006. (*Id.* ¶ 11). She is prepared to litigate who is entitled to the proceeds but only because MONY refused to provide her with relevant copies of the policy documents, after she made repeated requests in November 2015 for those documents and a joint request with Snyder in December 2015. (*Id.* ¶ 17).

The Insured was the owner of the policy from the date of its initial purchase until at least September 5, 2014. (*Id.* ¶ 28). At the time of their divorce, Snyder had signed an agreement on March 9, 1989, waiving her rights under the policy. (*Id.* ¶ 29). Snyder initiated a meeting that took place on September 4, 2014, between the Insured and two MONY agents so that she could reestablish her rights to the policy either as owner or beneficiary. (*Id.* ¶ 40). Snyder submitted a form, dated September 5, 2014, to MONY purporting to show a transfer of ownership of the policy to Snyder. (*Id.* ¶ 31). However, before his death, the Insured denied the signature on the form was his. (*Id.*). If he did execute the form, "he did so while suffering from a documented cognitive impairment" (*id.*), as detailed elsewhere in Eckert's answer and counterclaim.

All three counterclaims are brought on Eckert's own behalf or as executrix of the Insured's estate. In Count I, Eckert alleges a claim against MONY for breach of fiduciary duty. She alleges that two MONY agents met with the Insured on September 4, 2014, to discuss the policy. (*Id.* ¶¶ 48-49). "If the topic of transferring ownership of the policy took place at that meeting, [the agents] had a duty to advise Eckert that transfer of the policy was against his interests." (*Id.* ¶ 50). MONY and its agents had a fiduciary duty to the Insured from the purchase of the policy through the meeting. (*Id.* ¶ 51). "Failure to properly advise [the Insured] about making a gift of that policy and approval of the alleged transfer of the policy by MONY is a breach of that duty." (*Id.* ¶ 52). After the transfer of ownership, the Insured "was no longer able to change the beneficiary, thus resulting in a loss to his widow or his estate of approximately $170,000." (*Id.* ¶ 53).

In Count II, Eckert alleges a claim against MONY for a breach of the duty of good faith and fair dealing. Eckert bases this claim on the same conduct that allegedly breached MONY's alleged fiduciary duty, the failure to properly advise the Insured about making a gift of the policy and its approval of the alleged transfer of ownership to Snyder. (*Id.* ¶ 56). As a result, the Insured was no longer able to change the beneficiary, causing "a loss to his widow or his estate of approximately $170,000." (*Id.* ¶ 57).

In Count III, Eckert alleges a claim against MONY that approval of the alleged transfer of ownership violated the Pennsylvania Unfair Insurance Practices Act. 40 Pa. Stat. Ann. §§ 1171.1-1171.15. As noted above, Eckert wants to substitute a bad-

faith claim under 42 Pa. Cons. Stat. Ann. § 8371 for this claim.  We will grant her the opportunity to amend her pleading to allow her to do so.

IV.  *Discussion*

Treating the claims as based in tort, MONY moves to dismiss the claim for breach of fiduciary duty and the claim for breach of the duty of good faith and fair dealing.[2]  MONY argues that the Pennsylvania Supreme Court treats claims based on these duties synonymously in the context of insurance cases, citing in support *Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 872 F. Supp. 1403, 1409 (E.D. Pa. 1995)("The Pennsylvania Supreme Court treats the breach of the contractual duty of good faith and breach of fiduciary duty synonymously in the context of insurance cases.").  Citing the same case, MONY further argues that Pennsylvania does not recognize common-law tort actions for bad faith or breach of fiduciary duty.  *Id.*  Since Snyder's demand for damages on these claims is equal to the proceeds of the policy, MONY asserts that the claims are essentially contractual in nature.  However, when the "gist" of a claim is contractual in nature, relief must be sought in contract, *Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.*, 963 F. Supp. 452, 454 (M.D. Pa. 1997)(Caldwell, J.).  It follows for MONY that, as both are based in tort, the claim for breach of fiduciary duty and the claim for breach of the duty of good faith and fair dealing must be dismissed.

---

[2] The parties apply Pennsylvania law to this case, and we see no reason to disturb that choice.

We disagree. We begin with the claim for breach of fiduciary duty. "Typically, the purchase of insurance is considered an arm's-length transaction, in which the insurer incurs no fiduciary duty apart from those that may be defined in the contract for insurance." *Yenchi v. Ameriprise Fin., Inc.*, 123 A.3d 1071, 1078 (Pa. Super. Ct. 2015). However, there is no absolute bar to such a claim. *Id.* ("we are aware of no binding precedent that would preclude the recognition of a confidential relationship merely because the parties conduct an insurance transaction. . . . we have stopped short of prohibiting such recognition in all cases" "of an arm's-length commercial contract"). It therefore appears that Eckert is not precluded from pursuing a tort claim for breach of fiduciary duty simply because it arises from the Insured's contract of insurance with MONY.

We add that *Greater New York Mut. Ins. Co.*, and *Ingersoll-Rand* are distinguishable. Both of those cases dealt with insurance for third-party claims and the obligation of the company to defend and indemnify the insured. *Greater New York Mut. Ins. Co.*, 872 F. Supp. at 1404, 1409; *Ingersoll-Rand*, 963 F. Supp. at 453. Such contractual duties create the obligation to act in good faith and in a fiduciary capacity for an insurance agreement dealing with third-party claims. *See Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 59, 188 A.2d 320, 322 (1963)("by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes

obligated to act in good faith and with due care in representing the interests of the insured"). In contrast, we deal here with first-party insurance on the life of the Insured.

We turn now to the claim for breach of the duty of good faith and fair dealing. MONY's argument against this claim is based on its position that the claim is a tort claim. We agree with its assertion that there is no tort claim in Pennsylvania for breach of the duty of good faith and fair dealing. *Greater New York Mut. Ins. Co.*, *supra*, 872 F. Supp. at 1409. However, such a claim is valid as a contract claim. *Zaloga v. Provident Life & Accident Ins. Co.*, 671 F. Supp. 2d 623, 630-31 (M.D. Pa. 2009); *Monck v. Progressive Corp.*, No. 13-CV-250, 2015 WL 1638574, at *3-4 (M.D Pa. April 13, 2015); *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521-22 (W.D. Pa. 2012). It would appear then that we should permit the claim to proceed as one for breach of contract, especially since Eckert is suing not just on her own behalf but also as executrix of the Insured's estate.

The difficulty is that Eckert insists she has the right to pursue this claim in tort and cites in support *Guthrie Clinic, Ltd. v. Travelers Indem. Co.*, No. 00-CV-1173, 2000 WL 1853044, at *3 (M.D. Pa. Dec. 18, 2000)(Munley, J.), and *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822 (Pa. Super. Ct. 2005). We agree with MONY that *Drelles* is simply irrelevant to the issue before us. As for *Guthrie Clinic*, that case is distinguishable because it dealt with third-party claims and was decided before more recent Pennsylvania authority on the issue of whether a breach of the contractual duty of good faith can be pursued in tort. *See Bukofski v. USAA Cas. Ins. Co.*, No. 08-1779,

2009 WL 1609402, at *5 (M.D. Pa. Jun. 9, 2009)(Munley, J.).  We nonetheless decide we will not dismiss this claim as it can still proceed as one in contract.

Eckert's third counterclaim is one under the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. Ann. §§ 1171.1-1171.15.  As noted above, Eckert wants to withdraw this counterclaim and pursue the third counterclaim as a bad-faith claim under 42 Pa. Cons. Stat. Ann. § 8371 instead.  MONY has argued in its reply brief why a section 8371 claim would lack merit.  However, at this juncture, while we will dismiss this counterclaim as it is based on Unfair Insurance Practices Act, we will grant Eckert leave to file an amended pleading asserting a bad-faith claim under section 8371.

In its reply brief, MONY argues for the first time that Eckert cannot pursue her counterclaims because only a beneficiary under the policy can bring claims related to the policy.  We do not address arguments raised for the first time in a reply brief.  In any event, the case MONY relies on, *Quinten v. United States Steel Corp.*, 186 Pa. Super. Ct. 384, 390-91, 142 A.2d 370, 374-75 (1958), is distinguishable.  The case says that named beneficiaries can sue to enforce rights under the policy, not that beneficiaries are the only ones who can sue.

Based on the foregoing, we will not allow MONY to withdraw from this case.  We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

March 17, 2016

-9-