IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONY LIFE INSURANCE  
COMPANY,  
      Plaintiff

vs.

CAROL SNYDER, f/k/a CAROL  
ECKERT, and PAMELA ECKERT,  
      Defendants

CIVIL NO. 1:CV-15-2109

(Judge Caldwell)

*M E M O R A N D U M*

I. *Introduction and Procedural History*

On November 3, 2015, invoking our diversity jurisdiction, plaintiff, MONY Life Insurance Company ("MONY"), filed this interpleader action to resolve which of the defendants is entitled to the proceeds of an insurance policy MONY issued on the life of Steve Eckert (the "Insured"). Defendants are Carol Snyder ("Snyder"), the Insured's ex-wife, and Pamela Eckert ("Eckert"), his widow.

Eckert filed three counterclaims against MONY, all on her own behalf or as executrix of the Insured's estate, based on MONY's alleged failure to properly advise the Insured about the policy, principally failure to advise about a decision that was made to transfer the ownership of the policy to his ex-wife, Snyder. The counterclaims were: (1) MONY breached a fiduciary duty it owed the Insured; (2) MONY breached a duty of good faith and fair dealing it owed the Insured; and (3) MONY violated the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. Ann. §§ 1171.1-1171.15.

MONY filed a motion to dismiss the counterclaims, arguing that they failed to state claims upon which relief could be granted.  We denied the motion as to the first two counterclaims and, upon Eckert's request, allowed her to file an amended counterclaim substituting a bad-faith claim under 42 Pa. Cons. Stat. Ann. § 8371 for the claim under Unfair Insurance Practices Act.  *MONY Life Ins. Co. v. Snyder*, 2016 WL 1058923 (M.D. Pa. Mar. 17, 2016).

Eckert filed another answer containing an amended counterclaim setting forth the section 8371 bad-faith claim.  We are considering Plaintiff's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaim for failure to state a claim upon which relief can be granted.

II.   *Standard of Review*

We use the same standard under Rule 12(b)(6) in deciding a motion to dismiss a counterclaim as we do in deciding a motion to dismiss a complaint.  *U.S. Renal Care, Inc. v. Wellspan Health*, No. 14-CV-2257, 2015 WL 5286638, at *6 (M.D. Pa. Sept. 10, 2015).  Thus, we "accept all factual allegations" of the counterclaim "as true, construe the [counterclaim] in the light most favorable to the [nonmoving party], and determine whether, under any reasonable reading of the [counterclaim], the [nonmoving party] may be entitled to relief."  *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted)(internal quotation marks omitted)(brackets added).

III. *Background*

In relevant part, plaintiff MONY alleges as follows. On or about July 30, 1985, MONY issued a life insurance policy on the life of the Insured with a death benefit in the amount of $127,000. (Doc. 1, Compl. ¶ 6). The owner of the policy was the Insured, and the beneficiary was "Carol Eckert – spouse," (*id.* ¶ 7), now Carol Snyder.

On or about March 9, 1989, the Insured and Snyder were divorced. (*Id.* ¶ 8). On or about January 9, 1989, they had executed a property settlement agreement, dividing their property as part of their divorce. (*Id.*). "At or around the time of the divorce, the Insured never changed the beneficiary election under the Policy." (*Id.* ¶ 9). After the divorce, the beneficiary was changed to: "former wife, Carol Snyder, if living, if not, the insured's executors or administrators." (*Id.* ¶ 10).

The Insured married Eckert in or around 2006. (*Id.* ¶ 11). "By letter dated September 17, 2015, prior to the Insured's death, the Insured wrote to MONY expressing concern about a change of ownership effective September 5, 2014, that had changed the policy owner from the Insured to Ms. Snyder." (*Id.* ¶ 12). "On October 18, 2015, while MONY was investigating the allegations made regarding the Policy, the Insured passed away." (*Id.* ¶ 13).

Eckert is the executrix of the Insured's estate, and Snyder is the beneficiary of record on the policy. (*Id.* ¶¶ 14 and 15). Snyder believes she is entitled to the proceeds of the  policy (*id.* ¶ 16), and Eckert has indicated she wants to litigate who is entitled to the proceeds of the policy. (*Id.* ¶ 17).

Asserting a status as "mere stakeholder," MONY admits the proceeds of the policy are payable but alleges it is unable to determine who is entitled to them. (*Id.* ¶¶ 20–22). MONY therefore requests an injunction against anyone suing it for the proceeds, that it be discharged from the litigation after payment of the proceeds into court, and that the two defendants be left to litigate their claims to the proceeds. (*Id.* ¶¶ 24 and 25).

Snyder filed an answer to the complaint and a crossclaim against Eckert, asserting she was entitled to the proceeds of the policy. Eckert filed an answer and crossclaim against Snyder, asserting she was entitled to the proceeds. As noted, Eckert's pleading contains three counterclaims against MONY.

On those counterclaims, Eckert alleges as follows, in pertinent part. The death benefit is $170,000, not $127,000. (Doc. 17, Answer ¶ 6). She married the Insured in 2011, not in 2006. (*Id.* ¶ 11). She agrees with MONY concerning the following. MONY is unable to determine who is entitled to the policy proceeds.[1] Unless conflicting claims are resolved in one proceeding, MONY may be subject to multiple litigation and risk duplicate or inconsistent rulings on liability for payment. (Doc. 1, Compl. ¶ 23, and Doc. 17, Answer ¶ 23). MONY is willing to pay the policy proceeds into court. (Doc. 1 Coml. ¶ 24, Doc. 17, Answer ¶ 24).[2] The Insured wrote to MONY on September 17, 2015, expressing concern about the September 2014 change of

---

[1] Eckert adds that if MONY had provided her with copies of the policy documents before suit, as she had requested in November and December 2015, Defendants may have been able to determine the validity of each of their claims. (Doc. 1, Compl. ¶ 21, and Doc. 17, Answer ¶¶ 17 and 21).

[2] Plaintiff has not done so yet because we refused to dismiss Eckert's counterclaims.

ownership, and the Insured died on October 18, 2015.

Eckert alleges the Insured was the owner of the policy from the date of its initial purchase until at least September 5, 2014. (Doc. 17, ¶ 28). At the time of their divorce, Snyder had signed an agreement on March 9, 1989, waiving her rights under the policy. (*Id.* ¶ 29). Snyder initiated a meeting that took place on September 4, 2014, between the Insured and two MONY agents so that she could reestablish her rights to the policy either as owner or beneficiary. (*Id.* ¶ 40). Snyder submitted a form, dated September 5, 2014, to MONY purporting to show a transfer of ownership of the policy to Snyder. (*Id.* ¶ 31). However, before his death, the Insured denied the signature on the form was his. (*Id.*). If he did execute the form, "he did so while suffering from a documented cognitive impairment" (*id.*), as detailed elsewhere in Eckert's answer and counterclaim.

All three counterclaims are brought on Eckert's own behalf or as executrix of the Insured's estate. In Count I, Eckert alleges a claim against MONY for breach of fiduciary duty. She alleges that two MONY agents (and Snyder as well) met with the Insured on September 4, 2014, to discuss the policy. (*Id.* ¶¶ 48-49). "If the topic of transferring ownership of the policy took place at that meeting, [the agents] had a duty to advise Eckert that transfer of the policy was against his interests." (*Id.* ¶ 50). MONY and its agents had a fiduciary duty to the Insured from the purchase of the policy through the meeting. (*Id.* ¶ 51). "Failure to properly advise [the Insured] about making a gift of that policy and approval of the alleged transfer of the policy by MONY is a breach of that

duty." (*Id.* ¶ 52). After the transfer of ownership, the Insured "was no longer able to change the beneficiary, thus resulting in a loss to his widow or his estate of approximately $170,000." (*Id.* ¶ 53).

In Count II, Eckert alleges a claim against MONY for a breach of the duty of good faith and fair dealing. Eckert bases this claim on the same conduct that allegedly breached MONY's alleged fiduciary duty, the failure to properly advise the Insured about making a gift of the policy and its approval of the alleged transfer of ownership to Snyder. (*Id.* ¶ 56). As a result, the Insured was no longer able to change the beneficiary, causing "a loss to his widow or his estate of approximately $170,000." (*Id.* ¶ 57).

In Count III, Eckert presents a bad-faith claim under 42 Pa. Cons. Stat. Ann. § 8371. In support, she alleges that the following actions or failure to act on MONY's part constitute bad faith:

> a. Transferring ownership of the policy based on a faxed transmission of one page of a six page transfer of ownership form which was not witnessed or notarized;
>
> b. Representing in paragraph ten of the Complaint that Steve Eckert had executed a change of beneficiary form in favor of Snyder when Eckert had not actually done so . . . ;
>
> c. Failing to begin an investigation of Steve Eckert's claim that he had not signed the transfer of ownership form;
>
> d. Changing the ownership of a policy with a cash surrender value of over 127,000.00 by an insured facing significant medical bills without making sure that he was capable of exercising the judgment necessary to determine he wanted to make this transfer;

  e. Failing to recognize that Eckert was suffering from a
number of cognitive impairments at the time of the meeting
and purported transfer in September, 2014;

  f. Failing to perform adequate legal research concerning
whether Snyder can be the beneficiary of the policy in
November, 2014 given a) the divorce between Steve Eckert
and Carol Snyder; b) the marital Settlement Agreement
signed by Snyder and Steve Eckert, c) and the marital rights
to the policy held by Pamela Eckert;

  g. Failing to communicate adequately with Steve Eckert
while he was alive and Pamela Eckert after Steve Eckert's
death;

  h. Failing to pay the policy proceeds to Pamela Eckert
individually or to the Estate of Steve Eckert;

  I. Seeking immunity for itself while at the same time denying
access to critical information about the policy to Carol Snyder
and Pamela Eckert.

(*Id.* ¶ 59(a)-(i)). As a result, the Insured was no longer able to change the beneficiary, causing "a loss to his widow or his estate of approximately $170,000." (*Id.* ¶ 60). Eckert seeks punitive damages, counsel fees and interest, as authorized under section 8371.

IV. *Discussion*

  42 Pa. Cons. Stat. Ann. § 8371 authorizes an award of punitive damages and attorney's fees when an "insurer has acted in bad faith toward the insured . . . ."[3]

---

[3] Section 8371 provides as follows:

  In an action arising under an insurance policy, if the court finds
that the insurer has acted in bad faith toward the insured, the
court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the

Section 8371 does not define bad faith, and the Pennsylvania Supreme Court has not yet stated how the section would be violated.  *See Rancosky v. Washington Nat. Ins. Co.*, 130 A.3d 79, 92 (Pa. Super. Ct. 2015); *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2105).  The Pennsylvania Superior Court has stated that a bad-faith claim consists of the following: "(1) the insurer did not have a reasonable basis for denying benefits under the policy, and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim."  *Rancosky*, 130 A.3d at 92.  *See also Wolfe*, 790 F.3d at 498.  A variety of conduct can constitute bad faith, such as a lack of a good-faith investigation or a failure to communicate with the claimant.  *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006).  And "the literal act of denying a claim" is not a necessary element of the tort.  *See UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004).  Nonetheless, "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits."  *Id.*

In moving to dismiss the bad-faith claim, MONY argues the following.  First, Eckert cannot satisfy the elements of a bad-faith claim because she admitted in her answer that MONY is unable to determine who is entitled to the policy proceeds and thus cannot be said to have denied a claim without a reasonable basis nor have acted

---

claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

intentionally or recklessly to deny a claim.  Second, MONY was never obligated to pay Eckert because Snyder was the only person named as a beneficiary on the policy so MONY could not be said to not have had a reasonable basis for denying a claim.  Third, Eckert has admitted MONY has filed a proper interpleader suit, and in these circumstances, under *Prudential Ins. Co. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009), she cannot pursue a bad-faith claim.  Fourth, aside from Eckert's allegation that MONY denied her the policy proceeds, her remaining allegations do not support a bad-faith claim since they are "wholly unconnected to a denial of benefits."  (Doc. 22, Supp'n Br. at p. 7).

       We need not deal with MONY's first three arguments.  We believe its fourth argument is correct and disposes of the entire claim, even if MONY initially directed it at allegations not focused on the denial of the proceeds.

       As Eckert asserts in her opposition brief, the "gravamen" of her bad-faith claim "is based on actions taken by MONY before Mr. Eckert's death.  The bad faith actions took place over the two years before Mr. Eckert died."  (Doc. 24, Opp'n Br. at p. 13).  Eckert's allegations are as follows:

> a. Transferring ownership of the policy based on a faxed transmission of one page of a six page transfer of ownership form which was not witnessed or notarized;
>
> b. Representing in paragraph ten of the Complaint that Steve Eckert had executed a change of beneficiary form in favor of Snyder when Eckert had not actually done so . . . ;
>
> c. Failing to begin an investigation of Steve Eckert's claim that he had not signed the transfer of ownership form;

      d. Changing the ownership of a policy with a cash surrender value of over 127,000.00 by an insured facing significant medical bills without making sure that he was capable of exercising the judgment necessary to determine he wanted to make this transfer;

      e. Failing to recognize that Eckert was suffering from a number of cognitive impairments at the time of the meeting and purported transfer in September, 2014;

      f. Failing to perform adequate legal research concerning whether Snyder can be the beneficiary of the policy in November, 2014 given a) the divorce between Steve Eckert and Carol Snyder; b) the marital Settlement Agreement signed by Snyder and Steve Eckert, c) and the marital rights to the policy held by Pamela Eckert;

      g. Failing to communicate adequately with Steve Eckert while he was alive and Pamela Eckert after Steve Eckert's death;

      h. Failing to pay the policy proceeds to Pamela Eckert individually or to the Estate of Steve Eckert;

      I. Seeking immunity for itself while at the same time denying access to critical information about the policy to Carol Snyder and Pamela Eckert.

(*Id.* ¶ 59(a)-(i)).

Eckert argues these allegations indicate that MONY's conduct is connected to a denial of benefits because MONY transferred ownership of the policy "under extremely questionable circumstances." (Doc. 24, Opp'n Br. at p. 15). In effect, by these actions, MONY "improperly gave away" the policy proceeds and should not be insulated against its bad faith in doing so. (*Id.* at p. 14).

We agree with MONY that these allegations are insufficient to state a bad-faith claim.  Subparagraphs (a), (d), (e) and (f), relate to a transfer of ownership, not to a denial of benefits.  Even if they alleged actionable conduct (and we express no opinion on that matter), this conduct could not be understood to bear on a claim for policy proceeds.  In other words, Eckert may be correct (at least in this case) that a transfer of ownership led to a denial of (or at least a dispute about) her claim for the proceeds of the policy, but the fact that an insurer's conduct leads to a transfer of ownership does not mean it gives rise to a claim for denial of benefits after that transfer has been made.  As judicially construed, section 8371 covers bad faith in denial of benefits, not bad faith in the transfer of ownership in a policy.  Section 8371 does not reach the latter conduct. *See UPMC Health Sys.*, 391 F.3d at 505-06 (defendant insurer's conduct designed to extract a higher premium from the plaintiff was not bad-faith conduct under section 8371 because it did not involve denial of benefits); *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 14 (Pa. Super. Ct. 2004)(defendant insurer's conduct in marketing its life insurance policies as retirement plans was not bad-faith conduct under section 8371 because it did not involve denial of benefits); *Liberty Mut. Ins. Co. v. Muskin Leisure Products, Inc.*, No. 05-CV-253, 2006 WL 2642387, at *3 (M.D. Pa. Sept. 13, 2006)(claim based on insurer's attempt to collect retroactive premiums could not be pursued under section 8371 when the plaintiff did not allege denial of benefits).

Given the chronology of events in this case, subsections (c), (g) and (h) do not support a bad-faith claim either.  As to subsection (c), as noted above, a deficient

-11-

investigation could support a bad-faith claim, but the Insured only gave MONY notice that the Insured denied having signed over ownership on September 17, 2015, and the Insured died on October 18, 2015, only about a month later, too little time for the insurer's failure to investigate to give rise to a bad-faith claim.  As to subsection (g), we fail to see how "failing to communicate adequately" with the Insured while he was alive and with Eckert after his death supports a bad-faith claim.  As to subsection (h), again, given the chronology of events, failing to pay the policy proceeds to the estate or to Eckert is insufficient.  As to subsection (i), given that the interpleader action was filed on November 3, 2015, only a little more than two weeks after the death of the Insured, filing this action cannot be treated as an attempt to seek immunity for MONY, especially since MONY is not denying liability for the proceeds and the interpleader seeks only to determine which party is entitled to them.  Finally, again given the time frame, it is not probative that MONY denied Eckert copies of the relevant policy documents before suit was filed and afterwards in November and December 2015.

   We will issue an appropriate order.


              /s/William W. Caldwell
              William W. Caldwell
              United States District Judge

June 22, 2016