IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONY LIFE INSURANCE  :
COMPANY,  :
    Plaintiff  :
     : CIVIL NO. 1:CV-15-2109
  vs.  :
     : (Judge Caldwell)
CAROL SNYDER, f/k/a CAROL  :
ECKERT, and PAMELA ECKERT,  :
    Defendants  :

# M E M O R A N D U M

I. *Introduction and Background*

Plaintiff, MONY Life Insurance Company ("MONY"), filed this interpleader action to resolve which of the defendants is entitled to the proceeds of an insurance policy MONY issued on the life of Steven Eckert (the "Insured"). Defendants are Carol Snyder ("Snyder"), the Insured's ex-wife, and Pamela Eckert ("Eckert"), his widow. Snyder has apparently always been the named beneficiary, and the Insured had transferred ownership of the policy to her about a year before his death.

We have before us Snyder's motion in limine to exclude the report of Susan E. Rushing, M.D., J.D., Eckert's expert.

According to the expert, Eckert's counsel "specifically asked whether Mr. Eckert suffered from weakened intellect as defined by the Pennsylvania courts in *Owens*, *Reichel* and *Lakatosh* at the time he transferred a longstanding Mony

Life Insurance policy purchased in 1985 to his former wife Carol Snyder on September 5, 2014." (Doc. 62-5, ECF p. 1, expert report).

After a review of the Insured's medical records, deposition testimony in the case, the three cases mentioned above, and after a one-hour interview with Eckert, the expert rendered opinions that the Insured suffered from a weakened intellect and that Snyder was in a confidential relationship with the Insured. She opined:

> It is my opinion that the medical records demonstrate that Mr. Eckert, the testator was in ill-health and suffering from memory impairment and bouts of confusion, forgetfulness and disorientation due to a number of medical conditions. These conditions pre-date the transfer of the MONY life insurance policy to his former wife, Carol Snyder. Therefore, it is my opinion to a reasonable degree of medical certainty that Mr. Steven Eckert suffered from weakened intellect as defined by the Pennsylvania courts at the time he transferred [the policy] to his former wife Carol Snyder on September 5, 2014.

(Doc. 62-5, ECF p. 11, expert report). The expert also opined:

> Further, medical records demonstrate that Ms. Snyder was present at medical appointments when Mr. Eckert's medical conditions and mental frailties were discussed, served as a liaison with the medical team and as power of attorney during periods when the couple was no longer married in years prior to the transfer. As such, it can be argued that Ms. Snyder had a confidential relationship with Mr. Eckert and owed him a duty not to take advantage of his frailty for financial gain.

(Doc. 62-5, ECF p. 11, expert report). Elsewhere in the report, the expert states that "[a]ll of my opinions expressed in this report are given within a reasonable degree of medical certainty." (*Id.*, ECF p. 1).

II. *Discussion*

Defendant Snyder moves to exclude the expert's opinion that the Insured suffered from a weakened intellect. Among other reasons for exclusion, she argues that weakened intellect is not part of the analysis for challenging an inter vivos gift, as opposed to a testamentary one, and that the opinion is therefore irrelevant. She cites *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig.*, 198 F. Supp. 3d 446, 452 (E.D. Pa. 2016)("'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'")(quoted case omitted).

Snyder points out that two of the cases used by the expert, *Estate of Reichel*, 400 A.2d 1268 (Pa. 1979), and *Estate of Lakatosh*, 656 A.2d 1378 (Pa. Super. Ct. 1995), involved will contests. In a will contest, when the proponent of the will shows that it has been validly executed, the burden shifts to the challenger asserting undue influence to prove "that there was a confidential relationship, that the person enjoying such relationship received the bulk of the estate, and that the decedent's intellect was weakened." *Reichel*, 400 A.2d at 1270; *Lakatosh*, 656 A.2d at 1383. The third, *Owens v. Mazzei*, 847 A.2d 700 (Pa. Super. Ct. 2004), did not involve a will contest but a challenge to a bank account in which the

-3-

decedent held the principal in trust for the two defendant bank officers as beneficiaries, a financial arrangement described by the court in *Owens* as a "poor man's will." *Id.* at 703. In those circumstances, the court analyzed the estate's challenge to the bank account under the framework for a will contest.

In contrast, Snyder argues that the instant case involves an inter vivos gift, the Insured's transfer of the policy to her during his lifetime. When an inter vivos gift is challenged, weakened intellect is not part of the analysis. Instead, to rebut the presumption that the gift is valid, the challenger can show that a confidential relationship between the donor and the donee existed at the time of the gift. *In re Clark's Estate*, 359 A.2d 777, 781 (Pa. 1976).[1] "[T]he burden then shifts to the donee to show that the gift was free of any taint of undue influence or deception." *Id.*[2]

In opposition, Eckert maintains that "weakened intellect" is a concept that applies to inter vivos gifts.[3] She also maintains that *Owens* is an inter vivos gift case, not a testamentary gift case, because the designation of the two bank

---

[1] "A confidential relationship exists '. . . as a matter of fact whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other.'" *Id.* (quoted case omitted).

[2] To carry this burden, the donee must "show that the gift was the free, voluntary and intelligent act of" the donor. *Id.* at 635.

[3] A weakened intellect has not been specifically defined, but it "is typically accompanied by persistent confusion, forgetfulness and disorientation." *Owens*, 847 A.2d at 707.

-4-

officers as beneficiaries was done during the decedent's lifetime. She further maintains that:

> *Owens* and other cases test the validity of the gift using the concept of undue influence. If a challenger to a gift establishes a confidential relationship, the analysis turns to whether there was undue influence. Undue influence is established where the donor is suffering from a "weakened intellect."

(Doc. 73, Eckert's Br. in Opp'n at p. 2).

We disagree with Eckert that *Owens* is an inter vivos gift case. The material fact is not the decedent's making the bank officers the beneficiaries of the account during his lifetime, but that the account acted as a poor man's will, as the court itself in *Owens* noted; the beneficiaries of the bank account are sure of receiving the account balance only upon the death of the decedent. As such, *Owens* is a testamentary gift case and cannot be relied on here.

Eckert also relies on *Jackson Nat'l Life Ins. Co. v. Heyser*, No. 12-CV-5051, 2013 WL 5278240 (E.D. Pa. Sept. 19, 2013). However, the language she quotes from *Heyser* actually supports Snyder. In *Heyser*, the court had to decide whether to apply the testamentary gift framework or the inter vivos gift framework to a challenge to a life-insurance beneficiary designation. 2013 WL 5278240 at *4. In making that decision, the court reviewed the two different

standards and noted that the framework for an inter vivos gift did not require the challenger to prove the donor's "weakened intellect." *Id.*[4]

We conclude that the motion in limine should be granted as to the expert's opinion on the Insured's weakened intellect as such a concept is not part of the framework we must apply to the transfer of the policy.

Snyder also argues that the expert's opinion that Snyder had a confidential relationship with the Insured should also be excluded. The expert opined that "it can be argued" that Snyder had a confidential relationship with the Insured. Snyder asserts that Pennsylvania law requires that an expert must testify that her opinion is made within a reasonable degree of certainty and expert testimony that "it can be argued" that there was a confidential relationship is not sufficient. Eckert counters that her expert did supply the requisite testimony when she affirmed in her report that all of her opinions were given within a reasonable degree of medical certainty.

Pennsylvania requires that an expert give her opinion within a reasonable degree of medical certainty. *Montgomery v. South Philadelphia Med. Group*, 656 A.2d 1385, 1390 (Pa. Super. Ct. 1995). Whether she has done so is determined from her testimony in its entirety. *Id.* An expert can use less definite language as long as she at some time during her testimony expresses her opinion

---

[4] Eckert also relies on *Estate of Frisina*, 2014 Pa. Super. Unpub. Lexis 217 (Pa. Super. Ct. July 8, 2014). In that case, the court did analyze a challenge to an inter vivos gift under the testamentary gift framework. *Id.* at *57-58. However, *Frisina* is an unpublished decision which we need not consider.

-6-

with reasonable certainty. *Id.* An opinion couched in terms of possibilities or probabilities is not sufficient. *Id.*

Here, Eckert's expert has not expressed herself with the requisite certainty about the confidential relationship. Saying that "it can be argued" that there was a confidential relationship is not enough. Nor is Eckert assisted by the expert's statement elsewhere in the report that all of her opinions were given within a reasonable degree of medical certainty. At best, as Snyder argues, this is an assertion to a reasonable degree of certainty that it can be argued that there was a confidential relationship. This is not enough. *See Estate of Carratura*, 2017 WL 75873, at *4 (Pa. Super. Ct. 2017)(nonprecedential)(passing reference elsewhere in expert's report to phrase "reasonable degree of neuropsychological certainty" not sufficient when the expert never stated that decedent suffered from a weakened intellect and at best the expert testified to a reasonable certainty that the decedent "most probably" suffered from a weakened intellect). Our ruling would be the same under federal law. *See Schulz v. Celotex Corp.*, 942 F.2d 204, 208 (3d Cir. 1991).

Based on the foregoing, we will grant Snyder's motion in limine and will exclude the expert's opinion that: (1) the Insured suffered from a weakened intellect and (2) Snyder had a confidential relationship with the Insured.

                                                   /s/William W. Caldwell
                                                   William W. Caldwell
                                                   United States District Judge

Date: July 31, 2017